IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREGORY L. BARNES,<br><br>*Plaintiff,*<br><br>v.<br><br>BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS and MARK DONOVAN, individually,<br><br>*Defendants.* | No. 16 C 8278<br><br>Judge Virginia M. Kendall |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff, Gregory L. Barnes ("Barnes") brings this racial discrimination action against the Board of Trustees of the University of Illinois ("the Board") and Mark Donovan ("Donovan"). Barnes proceeds under Title VII of the Civil Rights Act of 1964 as amended 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1981 and 42 U.S.C. § 1983, seeking relief for the alleged discrimination he suffered at the hands of Defendants when they failed to promote him. (Dkt. 14). Counts I and II of the First Amended Complaint are solely brought against the Board under Title VII and § 1983, respectively. Count III seeks individual liability for Donovan's actions and is brought pursuant to § 1981. Donovan and the Board moved for summary judgment and the Board filed a Motion to Bar and Strike the Testimony of Plaintiff's Expert. (Dkts. 63, 66, 69). For the reasons stated within, the Court grants both Motions for Summary Judgment and

denies the Motion to Bar and Strike as moot. The Board's Motion to Strike Plaintiff's Responsive Briefing is denied as moot.

After conducting a review of the docket, the Court became aware that Barnes never filed a responsive briefing to the Board's Motion for Summary Judgment and instead filed a duplicate of its response to Donovan's Motion. The Court inquired as to this oversight and Barnes filed his Response on March 11, 2019, (Dkt. 89), nearly one year after the deadline and without any justification for the extended delay. The Court invited the Board to file a Reply and instead the Board moved to strike the Response. Despite Barnes's failure to provide a reason for the delayed filing, the Court assumes the mistake was inadvertent. The Court accepts the late Response from Barnes as filed and deems a Reply from the Board as unnecessary. In ruling on the Board's Motion, the Court took in to consideration Barnes's Response to the Board's Statement of Undisputed Facts (Dkt. 75), Barnes's Statement of Additional Facts (Dkt. 84), and Barnes's Response in Opposition to the Board's Motion for Summary Judgment (Dkt. 89), along with the Board's filings. Importantly, the operative facts and law are largely identical to the fully briefed Motion for Summary Judgment by Donovan.

## **BACKGROUND**

Barnes is an African American currently employed at the University of Illinois at Chicago ("UIC") as an Assistant Chief Operating Plant Engineer in the Facilities Management Department, Heat, Light and Power division. (Dkt. 75, ¶ 4). The Board is the governing body of the University of Illinois, which includes the UIC campus.

*Id.* at ¶ 3. At all relevant times, Donovan served as the Vice Chancellor for Administrative Services for UIC. *Id.* at ¶ 5. Donovan's responsibilities included conducting interviews and selecting applicants for open positions. *Id.* at ¶¶ 15-17.

In January of 2016, Barnes applied for the position of Chief Operating Engineer at UIC. *Id.* at ¶ 2. The Chief Operating Engineer position reports directly to Donovan. *Id.* at ¶ 15. The Chief Operating Engineer position is considered a civil service position under The State University Civil Service System ("SUCSS"). *Id.* at ¶ 9. SUCSS identifies the minimum requirements for civil service positions and the Board plays no part in these specifications. *Id.* Like all civil service jobs, individuals applying for the Chief Operating Engineer position were required to take an exam along with completing an application and listing their qualifications. *Id.* at ¶ 10. All applicants that meet the minimum qualifications are put on a register with their score. *Id.* For the Chief Operating Engineer position here, eleven candidates were placed on the civil service register and provided to the Facilities Management Department for review. *Id.* at ¶ 12. The Civil Service rules do not prescribe specific interview protocols and it is up to the department to determine how to conduct interviews. *Id.* at ¶¶ 13-14.

Donovan conducted the interviews himself for the Chief Operating Engineer position in February 2016. *Id.* at ¶¶15-16; (Dkt. 74, ¶ 21). Of the eleven candidates for the position, nine were Caucasian and two were African American. (Dkt. 74, ¶ 21). In making his hiring decision, Donovan did not review any of the candidates' personnel files, performance evaluations, or results from the civil service

examination. (Dkt. 75, ¶ 17). The results of the civil service examination are not shared with Donovan. (Dkt. 74, ¶ 14). Donovan viewed the open engineer position as a leadership position which required experience with a high-pressure steam and hot water system. *Id.* at ¶ 16.

Anthony Civito ("Civito") was one of the eleven candidates for the open engineer position and was ultimately chosen for the position. (Dkt. 75, ¶¶ 22-27, 35). Civito brought several documents with him to his interview including a copy of his application, his resume, relevant certificates, a letter of recommendation, documents describing his work history, a Myers-Briggs Interpretive Report, a self-evaluation report, a manual he developed, a training program he created, and documents related to leadership classes he took at UIC. *Id.* at ¶¶ 22-25. During the interview, Civito provided specific examples of how his past experience at Midway Airport would directly relate to the engineer position. *Id.* at ¶ 27.

Barnes also interviewed with Donovan for the Chief Operating Engineer position. *Id.* at ¶ 31. Barnes did not bring any materials with him to the interview. *Id.* During the interview, Donovan asked Barnes to "tell him about himself" and "what [Barnes] would do to help the University." *Id.* at ¶ 32. In his deposition, Barnes testified that he discussed ideas on how to obtain the best price with vendors and a dress code for engineers. *Id.* Barnes believes that Donovan treated him respectfully during the interview and admits that Donovan "has never said anything to Mr. Barnes that would make Mr. Barnes believe Mr. Donovan would make the decision based upon the race of the candidates." *Id.* at ¶ 34. Barnes further admits

that he didn't know the reasons why Civito was chosen for the position, what factors Donovan considered in his decision-making, or how other candidates performed in their interviews. *Id.* at ¶¶ 36-37; (Dkt. 74, ¶ 59). Barnes believes he was qualified for the position but admits that he could not say he was more qualified than the other applicants. (Dkt. 75, ¶ 41). It is Barnes's subjective opinion that he was most qualified because of his experience with the mechanical equipment at the Sheraton Hotel, but he did not mention any of this experience in his interview with Donovan. (Dkt. 74, ¶ 60). Barnes concedes that each candidate also likely had the subjective belief that he or she was the most qualified. *Id.*

## **LEGAL STANDARD**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Sorensen v. WD-40 Co.,* 792 F.3d 712, 722 (7th Cir. 2015). In determining whether a genuine issue of fact exists, the Court must take the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.,* 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be

evidence on which the jury could reasonably find for [that party]." *Anderson,* 477 U.S. at 252. The Court "limit[s] its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. of Trustees,* 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, the Court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Anderson,* 477 U.S. at 248; *Drake v. Minnesota Mining & Mfg. Co.,* 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.") (internal quotations omitted).

## DISCUSSION

**I. Summary Judgment on Counts I (Title VII) and III (§ 1981)**

Barnes first alleges that the Board violated Title VII by failing to promote him to the Chief Engineer position. The third count of the First Amended Complaint is brought solely against Donovan in his individual capacity under § 1981 for the same alleged failure to promote. "Because the elements and methods of proof are the same regardless of whether a discrimination claim is brought under Title VII or § 1981, the summary judgment analysis is also the same for claims under both statutes." *Figueroa v. Village of Melrose Park,* 127 F.Supp.3d 905, 907 (7th Cir. 2015). Since

the operative facts and law are the same here, the Court addresses the Board's Motion for Summary Judgment on Count I (Title VII) in conjunction with Donovan's Motion for Summary Judgment on Count III (§ 1981).

### A. The Relative Qualifications of Barnes and Civito

To succeed on his claims that Defendants discriminated against him on the basis of his race, Barnes is required to put forward evidence satisfying a *prima facie* case of discrimination. A plaintiff "must produce evidence showing that (1) []he was a member of a protected class; (2) []he was qualified for the position sought; (3) []he was rejected for the position; and (4) the employer promoted someone outside of the protected group who was not better qualified for the position that []he sought." *Jaburek v. Foxx,* 813 F.3d 626, 631 (7th Cir. 2016). Should the plaintiff succeed in making a *prima facie* showing, the burden then "shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action." *Adams v. City of Indianapolis,* 742 F.3d 720, 735 (7th Cir. 2014). If the defendant is able to articulate a legitimate reason, the burden returns to the plaintiff "who must present evidence that the stated reason is pretext for discrimination." *Id.* (citing *Fischer v. Avanade, Inc.,* 519 F.3d 393, 402 (7th Cir. 2008). In employment discrimination matters, the core question at the summary judgment stage is "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz v. Werner Enterprises, Inc.,* 834 F.3d 760, 765 (7th Cir. 2016).

Defendants concede the first three prongs of the *prima facie* case and instead dispute that Barnes was more qualified than Civito, the individual eventually chosen for the position. (Dkt. 64, pg. 5); (Dkt. 70, pg. 8). To satisfy his burden, Barnes must present evidence raising a question of fact as to whether Civito was not more qualified. Barnes's personal belief that he was more qualified than Civito should not be discarded based simply on its self-serving nature. *See Whitaker v. Wisconsin Dep't of Health Servs.,* 849 F.3d 681, 685-86 (7th Cir. 2017) (citing *Hill v. Tangherlini,* 724 F.3d 965, 967 (7th Cir. 2013)). However, Barnes's self-serving statement must "provide sufficient evidence to allow a trier of fact to find" in his favor. *Id.* at 686. Barnes fails in this respect as he does not attempt to argue that his resume, prior experience, or education place him head and shoulders above Civito. In fact, Barnes foreclosed such an argument as he "admitted that he could not say that he was more qualified than anybody else who applied." (Dkt. 75, ¶ 41). Instead, Barnes relies solely on a comparison between his and Civito's performance evaluation scores to establish that Civito was not more qualified than he. *See* (Dkt. 82, pg. 5) ("In this case, there is evidence that Barnes was better qualified because his performance evaluation in effect during the time of the promotion was higher than that of Civito, who received the promotion."). Civito's October 2014 performance review resulted in a total score of "15/21" and a score summary of "Meets Expectations." (Dkt. 77-5, pgs. 40-43). Barnes's performance review, also completed in October 2014, resulted in a total score of "17/21" and similarly yielded a summary score of "Meets Expectations."

(Dkt. 77-3, pgs. 47-50). These isolated performance reviews stand alone as Barnes's only supporting evidence of his qualifications.

Barnes erased any potential factual dispute in agreeing that "he could not say that he was more qualified than anybody else who applied." (Dkt. 75, ¶ 41). Even absent such an admission, the singular reliance on performance evaluations does not help Barnes in reaching in his burden. The performance evaluations for Barnes and Civito took place more than a year prior to the interview and selection process at issue here. Barnes's reliance on these evaluations is curious as Donovan noted he did not even look at the performance evaluations for any of the eleven candidates. (Dkt. 75, ¶ 17). The Court is hard pressed to ascertain exactly how evaluations that Donovan did not see somehow amount to evidence of racial discrimination. Even taking the evaluations for what they are worth, both Civito and Barnes received the exact same summary score classification of "Meets Expectations." (Dkt. 77-5, pgs. 40-43); (Dkt. 77-3, pgs. 47-50). While it is true that Barnes scored two points higher on his evaluation, Barnes provides no indication as to why this two-point distinction is anything other than trivial especially when it results in the same categorical ranking. Accordingly, the Court finds that Barnes has wholly failed to carry his burden in providing evidence that Civito was not, in fact, more qualified for the position and therefore summary judgment in favor of Donovan and the Board is warranted.

**B. Defendants' Reason for Hiring Civito over Barnes and Pretext**

Assuming arguendo that Barnes could meet his *prima facie* burden, Defendants offer a valid, nondiscriminatory reason for failing to choose Barnes for

the Chief Engineer position. *Millbrook v. IBP, Inc.,* 280 F.3d 1169, 1174 (7th Cir. 2002) ("The burden of production then shifts to the defendant-employer to produce evidence of a legitimate, nondiscriminatory reason for its employment decision."). Donovan stated that he made the decision on filling the Chief Engineer position based solely on the interviews he conducted. (Dkt. 75, ¶ 35). As a result, Donovan concluded that Civito was the best candidate for the job. *Id.* In support of this decision Donovan notes that Civito came to the interview prepared with extensive materials, had more than 20 years of experience, worked at UIC previously as an assistant operating engineer, demonstrated initiative, and articulated the best answers to the questions asked. (Dkt. 65-2, ¶¶ 21-34). Such a showing, in the form of Donovan's declaration and deposition testimony, is sufficient to rebut the assumed *prima facie* case propounded by Barnes. *Perdomo v. Browner,* 67 F.3d 140, 145 (7th Cir. 1995) (writing that simply stating the plaintiff "was not *as* qualified" as the other candidates was sufficient to rebut the *prima facie* presumption of discrimination); *see also Scruggs v. Garst Seed Co.,* 587 F.3d 832, 839 (7th Cir. 2009) ("Garst maintains that it chose a more qualified candidate for the Research Assistant position, which is a legitimate explanation.").

With Defendants able to articulate a legitimate explanation for their decision to hire Civito over Barnes, the burden returns to Barnes and the question becomes whether the stated explanation is merely pretextual for racial discrimination. *Wrolstad v. Cuna Mutual Insurance Society,* 911 F.3d 450, 454 (7th Cir. 2018). "Pretext is shown by the plaintiff asserting evidence demonstrating that '(1) the

employer's non-discriminatory reason was dishonest and (2) the employer's true reason was based on a discriminatory intent.'" *Garofalo v. Vill. of Hazel Crest,* 754 F.3d 428, 439 (7th Cir. 2014) (quoting *Stockwell v. City of Harvey,* 597 F.3d 895, 901 (7th Cir. 2010)). It is Barnes's obligation to show that Defendants lied when they stated they hired Civito because he was better qualified for the position. *Johnson v. Nordstrom, Inc.,* 260 F.3d 727, 733 (7th Cir. 2001) ("Thus, Johnson's burden was to show that Nordstrom lied when it stated that it believed Johnson was unqualified … or when it stated that it believed Bennett was more qualified. Johnson's subjective belief that she was better qualified than Bennett does not, without more, demonstrate pretext.").

In his opposition to Donovan's Motion for Summary Judgment, Barnes appears to rely on two primary arguments in support of his theory that the Defendants' stated reasons for hiring Civito are pretext for discrimination. First, Barnes highlights statements made to the EEOC in the Board's position statement. The Board's position statement reads, in part:

> [D]uring his years in engineering roles he spent little time on the West Campus, which is the area of responsibility of this Chief Engineer position…he had the opportunity to request to be upgraded to Acting Chief to gain experience in this role, but he never did so… [Jones] developed very little experience with the UI Hospital, a key part of the West campus responsibilities of the Chief position… Approximately, two years ago, Civito requested to take a vacated position on the West side, during days, a lateral move that would enable him to learn the operations of the West Campus… In other words, Civito took the initiative two years ago to prepare himself for the responsibilities of the West campus chief engineer position.

(Dkt. 86, ¶ 7). Out of the gate, the relevance of this statement is questionable as it relates to a matter regarding a different UIC employee, Michael Jones, and not Barnes. However, disregarding potential irrelevance, the statement made before the EEOC regarding why Civito was chosen is entirely consistent with the further elaborated reasons given by Defendants throughout this litigation. In their EEOC position statement, the Board highlights Civito's initiative in preparing himself and advancing his career. *See id.* This notion is completely in line with those presented throughout the litigation. *See e.g.* (Dkt. 65-2, ¶¶ 25-26) ("I was impressed with Mr. Civito's initiative. I viewed Mr. Civito's commitment to his own professional development through continuing course work to be attributes which would make him a good chief operating engineer. … Likewise, I considered Mr. Civito's concrete examples of training materials provided to his team to demonstrate a level of commitment and initiative I believed would make Mr. Civito a good chief."). While it is true that conflicting, retracted, or inconsistent reasons for an employment decision can demonstrate pretext, simply augmenting justifications is not enough to do so. *See Nordstrom, Inc.,* 260 F.3d at 733-34 ("Here, Nordstrom simply supplemented its explanations in the context of EEOC charges and litigation; there has been no retraction of any of its reasons for failing to promote Johnson nor are any of its reasons inconsistent or conflicting."). Here, Defendants' position has remained consistent over time and remains a far cry from exhibiting evidence that the Board and Donovan lied about why they did not hire Barnes. *Nordstrom, Inc.,* 260 F.3d at 733.

Barnes's second factor in establishing pretext centers on the format Donovan used in conducting interviews for the Chief Engineer position. Barnes takes issue with the "very subjective nature of the interview process," specifically pointing out that Donovan conducted the interviews alone and did not ask the same questions of all the candidates. (Dkt. 82, pg. 14). This argument is similarly unavailing. Subjective considerations are inescapable in employment decisions and "even subjective *misjudgments* may not necessarily be the basis for Title VII liability." *Mozee v. Jeffboat, Inc.,* 746 F.2d 365, 371 (7th Cir. 1984) (emphasis in original). While Barnes may be correct in suggesting it would have been a better policy to have a set list of questions for each candidate or perhaps even a panel of interviewers, this is not enough to survive summary judgment. *See E.E.O.C. v. Sears, Roebuck & Co.,* 839 F.2d 302, 332 (7th Cir. 1988) ("While it may have been better policy for Sears to have had written instructions and formal training for interviewers regarding qualities to look for in commission sales applicants, we cannot say on this record that Sears exercised so much subjectivity as to engage in a discriminatory practice."). Indeed, it is not for this Court to operate as a "superpersonnel department that will second guess an employer's business decision." *Gordon v. United Airlines, Inc.,* 246 F.3d 878, 889 (7th Cir. 2001). The assailment of Donovan's interview practices does little work to rebut the legit, nondiscriminatory reasons proffered by Defendants in justifying their employment decision here. Barnes has failed to come forward with objective evidence that Defendants' stated reasons are lies and in fact has undercut his ability to do so by his own admission that Donovan never said anything to Barnes which

would make him believe the decision was based upon the candidates' race. (Dkt. 75, ¶ 34).

Ultimately, "the fundamental question at the summary judgment stage is simply whether a reasonable jury could find prohibited discrimination." *Bass v. Joliet Pub. Sch. Dist. No. 86,* 746 F.3d 835, 840 (7th Cir. 2014). Barnes has plainly failed to present evidence creating a question of fact both at the *prima facie* stage and in attempting to show pretext. At its core, Barnes's argument is that he believes he is more qualified than Civito and that Donovan's one-on-one interview technique was too subjective. There is no dispute that Civito was qualified for the position. (Dkt. 75, ¶ 41). Even if it could be said that Civito was less qualified than Barnes, "the difference must be a significant one." *Sublett v. John Wiley & Sons, Inc.,* 463 F.3d 731, 738 (7th Cir. 2006). In the absence of disputed material facts, no reasonably jury could find that discrimination was present in the decision not to promote Barnes. Summary judgment in favor of Donovan and the Board is appropriate.

**II. Count II (§ 1983) and Sovereign Immunity**

Barnes purports to bring Count II against the Board under § 1983, alleging that the Board has a policy, practice, or custom of not promoting African-Americans to the Chief Engineer position. However, this Count is barred by the Eleventh Amendment and sovereign immunity. Though not explicitly in the text of the Amendment, unconsenting states are immune from lawsuits brought in federal court by their own citizens. *Edelman v. Jordan,* 415 U.S. 651, 662-63 (1974). This protection extends to state agencies, specifically including Illinois state universities.

*Cannon v. University of Health Science/The Chicago Medical School,* 710 F.2d 351, 357 (7th Cir. 1983) ("[B]ecause the state universities are the alter ego of the State…[i]f Cannon's suit would result in a damage award payable by the universities, it is barred by the Eleventh Amendment."). Here, the Board is unquestionably considered an arm of the State. *Id.* Therefore, the Eleventh Amendment serves to bar Barnes's § 1983 claims against the Board and the Board is entitled to judgment on this Count as a matter of law.

**III. The Board's Motion to Bar the Testimony of Plaintiff's Expert**

The Board also moves to bar the testimony of Plaintiff's proposed expert, Dr. Palmer Morrel-Samuels, Ph.D. (Dkt. 66). Barnes offers this testimony for the purpose of calling in to question the interviewing methods used by Donovan. Whether Dr. Morrel-Samuels could testify at trial in no way affects the analysis and conclusions reached on the merits above. The admissibility of Dr. Morrel-Samuels' testimony is not essential to the examination of the record or the relevant legal issues and is moot for summary judgment purposes.

## **CONCLUSION**

For the abovementioned reasons, the Court grants the Board's and Donovan's Motions for Summary Judgment. (Dkts. 63, 69). The Board's Motion to Strike the Report and Bar the Testimony of Palmer Morrel-Samuels is denied as moot. (Dkt. 66). Likewise, the Board's Motion to Strike Barnes's response brief is also moot. (Dkt. 91).

_____
Virginia M. Kendall
United States District Judge

Date: March 27, 2019